# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA SOUTHERN DIVISION

No. 7:18-CV-206-FL

| | |
|---|---|
| MARISA REVAK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     <u>O R D E R</u> |
| | ) |
| HANS J. MILLER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on Plaintiff's motion to compel and for an award of fees and costs, [DE-40], non-party Onslow County and Sheriff Hans J. Miller's motion to quash a subpoena, [DE-48], and Sheriff Miller's motion for a protective order and an award of fees and costs, [DE-48]. Defendants responded to Plaintiff's motion to compel, [DE-51], and Plaintiff responded to Onslow County and Sheriff Miller's motions, [DE-56]. The issues have been fully briefed, and the motions are ripe for decision. For the reasons stated below, Plaintiff's motion to compel is allowed in part and denied in part, Plaintiff's request for an award of expenses is denied, Onslow County and Sheriff Miller's motion to quash is allowed, Sheriff Miller's motion for a protective order is allowed, and Defendants' motion for an award of fees and costs is denied.

## I. BACKGROUND

This action arises from Plaintiff's employment as a detention officer with Defendant Onslow County Sheriff's Office. In her amended complaint, Plaintiff alleges that she was assigned to a video visitation position to assist another employee, Christine Parrott, who had a serious medical condition. Am. Compl. [DE-18] ¶ 13. The assignment allowed Plaintiff to better attend to her child care obligations, but it was met with negativity from her direct supervisor, Captain

Jeffries. *Id.* ¶ 16. Captain Jeffries subjected Plaintiff to harassment in the following months, including publicly berating her on several occasions, changing her time cards, making several comments indicating an animus toward women employees with children, and throwing paperwork at Plaintiff on a number of occasions. *Id.* ¶¶ 17–32. Sheriff Miller, Colonel Worrell, Major Thomas, and Captain Lewis allegedly ignored Plaintiff's complaints about Captain Jeffries and failed to act to prevent the harassment. *Id.* ¶¶ 36–44. Plaintiff tendered her resignation to Sheriff Miller on March 12, 2018. *Id.* ¶ 41. On May 31, 2018, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of her sex and retaliation. *Id.* ¶ 46. She received a notice of the right to sue on August 22, 2018. *Id.* ¶ 47. On February 8, 2019, Plaintiff filed her amended complaint alleging claims of harassment and discrimination on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, retaliation, violations of the Equal Protection Clause of the Fourteenth Amendment, a negligent failure to prevent civil rights violations, and violations of the North Carolina Wage and Hour Act. *Id.* ¶ 49–88.

On May 31, 2019, Plaintiff served Requests for Production of Documents ("RFP") on Defendant Onslow County Sheriff's Office. Pl.'s Mem. [DE-41] at 3. On August 26, 2019, Defendants responded and asserted objections to Requests 6–10. *Id.* The parties met and conferred on October 24, 2019 but were unable to resolve the dispute. *Id.* at 4–5. The court held a telephonic hearing on November 19, 2019. [DE-39]. Following the hearing, the present motion to compel was filed on December 6, 2019. [DE-40]. Additionally, the parties discussed at the hearing documents in the possession of the Onslow County Human Resources Department. [DE-48] at 1. On December 6, 2019, Plaintiff served a subpoena on Onslow County requiring production of those documents. *Id.* Onslow County served its objections to the subpoena and a privilege log on

2

Plaintiff on December 20, 2019. *Id.* at 2. On that date, Plaintiff's counsel confirmed that the subpoena would not be withdrawn. *Id.* at 3. Sheriff Miller and Onslow County then filed the present motion to quash the subpoena. *Id.*

## II. STANDARD OF REVIEW

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides the general rule regarding the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06-CV-889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Rule 37 of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to produce or make available for inspection requested documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). However, the Federal Rules also provide that

the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

3

Fed. R. Civ. P. 26(b)(2)(C). "Additionally, the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at \*4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). Finally, the party seeking the court's protection from responding to discovery "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Mainstreet Collection*, 270 F.R.D. at 240 (citation omitted). Accordingly, as the party resisting discovery, it is Defendants' burden to show why discovery should be denied.

## III. DISCUSSION

### A. Plaintiff's motion to compel

Plaintiff requests the complete personnel records of Sheriff Miller, Colonel Donald Worrell, Major Tommie Thomas, Captain John Lewis, and Lieutenant Michael Barron in RFP 6–10. [DE-41-1] at 4–6. Defendant objected, contending that the requests seek documents that are not relevant, disproportionate to the needs of the case, and insufficient to overcome the presumption of confidentiality of N.C. Gen. Stat. § 153A-98. [DE-41-2] at 4–8.

Plaintiff contends that the personnel files are clearly relevant because the employees are alleged to have failed to properly respond to Plaintiff's complaints or intervene to prevent further harassment. Pl.'s Mem. [DE-41] at 6. Plaintiff also notes that the protective order in this case protects any confidential information in the files and satisfies the requirements of N.C. Gen. Stat. § 153A-98(c)(4), and Defendant may redact any confidential information in the files that meets the criteria of N.C. Gen. Stat. § 132-1.2. *Id.* at 7–9. Defendant responds that much of the information contained in the files is not relevant, and Plaintiff is aware of the types of information contained in the files but she has not articulated how each item may be relevant. Def.'s Resp. [DE-

4

51] at 3–10. Defendant also contends that it is prohibited from disclosing the files by N.C. Gen. Stat. § 153A-98. *Id.* Accordingly, the parties' dispute involves two issues: (1) whether any North Carolina statute prohibits production of the files, and (2) whether the files are clearly relevant.

**1. N.C. Gen. Stat. §§ 153A-98(c)(4) and 132-1.2**

North Carolina law provides that certain types of information contained in county employee personnel files, such as the employee's name, title, and salary, among others, are matters of public record. N.C. Gen. Stat. § 153A-98(b)(1)–(12). Any other information contained in a personnel file is confidential and may only be open to inspection in one of seven specified circumstances. *Id.* § 153A-98(c)(1)–(7). One of those circumstances is "[b]y order of a court of competent jurisdiction." *Id.* § 153A-98(c)(4).

An order on a motion to compel or a protective order satisfies the court order requirement of N.C. Gen. Stat. § 153A-98(c)(4). *Rhodes v. Ingram*, No. 7:13-CV-192-BR, 2015 WL 1038136, at *3 (E.D.N.C. Mar. 10, 2015); *Anderson v. Caldwell Cty. Sheriff's Office*, No. 1:09-CV-423, 2011 WL 2224994, at *1 (W.D.N.C. June 8, 2011). The protective order entered in this case on August 27, 2019 provides:

> Information protected from public disclosure by N.C. Gen. Stat. § 153A-98 that is produced by Defendants in response to a discovery request is, and is deemed, produced by order of this Court pursuant to N.C. Gen. Stat. §153A-98(c)(4) and may be examined as provided, and on the terms and conditions specified, by this Order.

[DE-28] at 3. The protective order thereby expressly states that it meets the court order requirement of N.C. Gen. Stat. § 153A-98(c)(4). *Id.* The order further states that the parties retain their rights to object on grounds of relevancy, and "[i]n such cases, the objection shall be handled as an ordinary discovery dispute." [DE-28] at 3–4. Accordingly, the court order requirement of

N.C. Gen. Stat. § 153A-98(c)(4) is satisfied, and Defendant's objections shall be addressed here as any other discovery dispute.

Plaintiff also addresses Defendant's objection under N.C. Gen. Stat. § 132-1.2. Section 132-1.2 provides that certain types of information, such as trade secrets, electronically captured images from voter registration documents, documents related to the closure or realignment of military installations, and identifying information of lottery winners, among other categories, are confidential. Plaintiff contends that Defendant may redact any such information from the personnel files as it did when it produced the personnel files of Christine Parrot, Louis Zimmerman, and Fred Jeffries. Pl.'s Mem. [DE-41] at 9. Defendant responds that finding and redacting confidential information in the personnel files would be difficult and costly. Def.'s Resp. [DE-51] at 5 n.1. Although the difficulty of identifying and redacting the confidential information would speak to the proportionality of the requests, Defendant does not contend that it would be impossible to comply with § 132-1.2. It appears that if Defendant were to redact the confidential information listed in § 132-1.2, as Plaintiff suggests, there would be no violation of that statute. Accordingly, § 132-1.2 is not a viable basis for refusing production. Because no North Carolina statute prohibits production of the personnel files, the remaining issue is whether the files are relevant.

**2. Relevancy**

"Personnel files are, by their very nature, highly confidential and a strong public interest weighs in favor of protecting the privacy rights of non-party employees." *Bouygues Telecom, S.A. v. Tekelec, Inc.*, No. 4:05-CV-78-FL, 2006 WL 8438418, at *2 (E.D.N.C. Nov. 6, 2006) (citations omitted). Because of that strong public interest in confidentiality, production of personnel files of non-party employees is ordered only when: "(1) material is clearly relevant; and (2) the need for

disclosure is compelling because the information sought is not otherwise readily available." *James v. Peter Pan Transit Mgmt., Inc.*, No. 5:97-CV-747-BO, 1999 WL 735173, at *11 (E.D.N.C. Jan. 20, 1999) (citations omitted); *see also Amos v. Welles*, No. 4:18-CV-28-D, 2019 WL 1428680, at *3 (E.D.N.C. Mar. 29, 2019).

When examining whether a personnel file is clearly relevant, courts consider the employee's degree of involvement in the alleged wrongdoing. *Amos*, 2019 WL 1428680, at *3. "[W]here the files sought are those of employees whose action or inaction has a direct bearing on the Plaintiff's claims or Defendant's affirmative defenses and especially where . . . the court has issued an appropriate confidentiality order, personnel files are subject to discovery." *Cason v. Builders FirstSource-Southeast Grp., Inc.*, 159 F. Supp. 2d 242, 247 (W.D.N.C. 2001). *Cason* was a racial discrimination case, and the court allowed discovery of the personnel files that belonged to "alleged harassers, who also were Plaintiff's superiors and undoubted participants in, at least, Defendant's initial investigation." *Id.* at 248. However, the court declined to compel production of the personnel files of other employees because "Plaintiff has stated nothing about them or what discoverable information might be in their personnel files . . . . Nor has the Plaintiff stated that any of these employees were witnesses to or participants in the alleged racial harassment." *Id.*; *see also Amos*, 2019 WL 1428680, at *3 (declining to compel production of personnel files when none of the plaintiff's arguments for why the files were relevant held weight); *Royse v. Tyco Electronics Corporation*, No. 5:05-CV-380-FL-3, 2006 WL 8438621, at *3 (E.D.N.C. May 12, 2006) (allowing production of parts of the personnel files of "four senior managers who plaintiff contends were each involved in his termination."); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 106 (E.D.N.C. 1993) (allowing production of the personnel file of the employee alleged to have negligently caused the plaintiff's injuries because the

7

personnel file may reveal that the employer hired, delegated tasks to, or failed to properly supervise underqualified employees).

Additionally, the court may find that parts of a personnel file are relevant and compel production of only those portions of the file. *See Bouygues Telecom*, 2006 WL 8438418, at *2 ("the Court finds that the detailed factual representations in Bouygues' memorandum of law . . . regarding the six named employees . . . are sufficient to justify the narrowly tailored production of certain parts of the files in question."); *Royse*, 2006 WL 8438621, at *3 (ordering production of employment evaluations, salary and bonus history, and documents concerning hiring, transfer, or termination because that "certain information" was relevant to the question of "whether these managers were rewarded for promotion of younger managers at the expense of older workers," and declining to compel production of other information in the files.); *McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 232 F.R.D. 246, 252 (E.D.N.C. 2005) (allowing a party to withhold personal information, such as medical, family, or insurance information, in a personnel file).

Here, Plaintiff contends that the files are clearly relevant because the employees are alleged to have failed to properly respond to Plaintiff's complaints or intervene to prevent further harassment. Pl.'s Mem. [DE-41] at 6. Defendant responds that the employees were not directly involved in the alleged harassment, so their personnel files are not clearly relevant. Def.'s Resp. [DE-51] at 8–9.

Plaintiff requests the personnel files of Sheriff Miller, Colonel Worrell, Major Thomas, Captain Lewis, and Lieutenant Barron. [DE-41-1] at 4–6. As asserted in Plaintiff's amended complaint, it appears that Sheriff Miller, Colonel Worrell, Major Thomas, and Captain Lewis were sufficiently involved in the alleged wrongdoing such that their personnel files are clearly relevant to Plaintiff's claims, but Lieutenant Baron was not sufficiently involved.

8

First, Sheriff Miller is alleged to have assigned Plaintiff to the video visitation position, which sparked harassment from Captain Jeffries. Am. Compl. [DE-18] ¶ 13. Plaintiff informed Sheriff Miller of the harassment when she resigned on March 12, 2018. *Id.* ¶¶ 41–42. Sheriff Miller told Plaintiff that the harassment would take time to fix, but he provided no further details, and he told Plaintiff that she should have been able to handle it herself. *Id.* ¶ 44. In her claims for relief, Plaintiff repeatedly alleges that Sheriff Miller failed to perform the duties of his office, and one of the bases of her discrimination, retaliation, Equal Protection violations, and negligent failure to prevent civil rights violations claims were that Defendants, including Sheriff Miller, failed to address her complaints of harassment. *Id.* ¶¶ 52, 54, 61, 64–65, 76, 79–80. Sheriff Miller's failure to perform the duties of his office is an omission that was sufficiently involved in the alleged wrongdoing and Plaintiff's claims such that Sheriff Miller's personnel file appears to be clearly relevant. *See Royse*, 2006 WL 8438621, at *3 (allowing production of parts of the personnel files of "four senior managers who plaintiff contends were each involved in his termination.").

Colonel Worrell, Major Thomas, and Captain Lewis are not defendants, but like Sheriff Miller, they are alleged to have wrongfully failed to act. The amended complaint alleges that Plaintiff complained to Colonel Worrell, Major Thomas, and Captain Lewis in February and March 2018, but nothing was done to stop the harassment. Am. Compl. [DE-18] at ¶ 36. Plaintiff alleges that Colonel Worrell was specifically made aware of the incident where Captain Jeffries threw paperwork at Plaintiff, spilling a drink on her keyboard. *Id.* ¶ 32. Additionally, Plaintiff alleges that Captain Lewis was the manager of the time management system, and after Captain Jeffries changed Plaintiff's timesheets, Captain Lewis restored Plaintiff's original time entries but failed to restore her lost vacation and sick time. *Id.* ¶ 24. Captain Lewis's failure to restore Plaintiff's lost time off is the basis for her claim for a violation of the North Carolina Wage and

Hour Act. *Id.* ¶ 86. Additionally, Plaintiff's supervisors' failure to prevent the harassment is one of the bases for Plaintiff's claims of discrimination, retaliation, Equal Protection violations, and negligent failure to prevent civil rights violations. *Id.* ¶¶ 52, 61, 72, 79. Accordingly, Plaintiff has alleged that her supervisors—including Colonel Worrell, Major Thomas, and Captain Lewis— were sufficiently involved in the wrongdoing that comprises Plaintiff's claims such that their personnel files are clearly relevant.

However, Plaintiff has not articulated how Lieutenant Barron was involved in wrongdoing such that his personnel file would be clearly relevant. The second amended complaint alleges that after Captain Jeffries berated Plaintiff for allowing a card with glitter to be delivered to an inmate, Plaintiff asked Lieutenant Barron when the policy had changed. *Id.* ¶ 19. Before Lieutenant Barron could respond, Captain Jeffries yelled at Plaintiff. *Id.* Later, when Ms. Parrott went on medical leave, Plaintiff asked Lieutenant Barron to intervene if Captain Jeffries entered Plaintiff's office, and Lieutenant Barron agreed to do so. *Id.* ¶ 35. Lieutenant Barron is not alleged to be one of Plaintiff's supervisors who ignored her complaints, and he is not alleged to have been involved in the harassment at all; at most, Lieutenant Barron was a witness to some of Captain Jeffries's conduct. Lieutenant Barron's acts or omissions do not appear to affect Plaintiff's claims. Accordingly, his personnel file is not clearly relevant. *See Cason,* 159 F. Supp. 2d at 247.

In summary, the personnel files of Sheriff Miller, Colonel Worrell, Major Thomas, and Captain Lewis are clearly relevant because their acts or omissions are the bases of several of Plaintiff's claims. Additionally, Defendants have not articulated how the information in the files may be available to Plaintiff elsewhere. *See Amos,* 2019 WL 1428680, at *3. Accordingly, Defendants are ordered to produce the personnel files of Sheriff Miller, Colonel Worrell, Major Thomas, and Captain Lewis within twenty-one days of this order. The court declines to compel

10

Defendants to produce the personnel file of Lieutenant Barron because it appears that he was merely a witness and that his acts or omissions are not clearly relevant to Plaintiff's claims.

### 3. Costs

Plaintiff also requests that the court award the costs and attorney's fees incurred in bringing the motion to compel. The moving party must, absent certain specified circumstances, be awarded expenses when a motion to compel discovery is granted. Fed. R. Civ. P. 37(a)(5)(A).

> If the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

*Id.* Courts have held that an award of reasonable expenses incurred is appropriate where the moving party has acted in good faith, the moving party attempted to resolve the matter without court intervention, and the non-moving party has failed to comply with its obligations under the Federal Rules. *See Loftin*, 2010 WL 4117404, at *3 (citing *Gardner v. AMF Bowling Ctrs., Inc.*, 271 F. Supp. 2d 732, 733–34 (D. Md. 2003); *Biovail Corp. v. Mylan Labs., Inc.*, 217 F.R.D. 380, 382 (N.D. W.Va. 2003)).

Here, Defendants' objections were substantially justified, so Defendants are not required to pay Plaintiff's costs in bringing her motion to compel. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii). "A legal position is 'substantially justified' if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'"

*Decision Insights, Inc. v. Sentia Grp., Inc.*, 311 F. App'x 586, 599 (4th Cir. 2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565–66 n.2 (1988)). Defendants reasonably argued that the personnel files were not clearly relevant because the employees did not harass Plaintiff themselves, and Defendants meticulously distinguished the cases cited by Plaintiff. Def.'s Resp. [DE-51] at 7–9. Although the court agrees that only one of the personnel files is not clearly relevant, Defendants' legal position on all the disputed files has a reasonable basis in law and fact, so Defendants' objections were substantially justified. Accordingly, the court declines to order Defendants to pay Plaintiff's costs in bringing this motion.

## B. Onslow County and Sheriff Miller's Motion to Quash and Sheriff Miller's Motion for a Protective Order

Sheriff Miller and non-party Onslow County move to quash a subpoena served on Onslow County by Plaintiff on December 6, 2019. [DE-48]. Additionally, Sheriff Miller moves for a protective order providing that the documents requested in the subpoena not be produced in discovery or, if they are produced, that they are subject to the terms of the existing confidentiality order in this case. [DE-49] at 1. The subpoena seeks documents created or produced in the course of the Onslow County Human Resources Department's investigation into Plaintiff's complaints, including the affidavits, written statements, or interview transcripts of twenty named individuals, as well as notes, reports, or summaries generated during the interviews. [DE-48-2] at 4–5. Sheriff Miller and Onslow County submitted privilege logs identifying sixteen interview recordings and transcripts and a memorandum to the County Attorney from the Human Resources Director as attorney work product and subject to the attorney-client privilege. [DE-48-4] at 2–3.

Subpoenas issued to nonparties are governed by Fed. R. Civ. P. 45. *See* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce a document and tangible things or to permit an inspection."). "In response to such a subpoena, a non-party may either file

12

a motion to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45(d)(3)(A), move for a protective order pursuant to Fed. R. Civ. P. 26(c), or oppose a motion to compel production of the subpoenaed documents pursuant to Fed. R. Civ. P. 45(d)(2)(B)." *Schaaf v. Smithkline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) (citing *United States v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 484 (D. Md. 2002)). When considering the propriety of enforcing a subpoena, a trial court should consider "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Id.* (quoting *Heat & Control, Inc. v. Hester Indus.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986)). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the court "must quash or modify a subpoena that subjects a person to undue burden." Fed. R. Civ. P. 45(d)(1), (d)(3)(iv).

"In the context of evaluating subpoenas issued to third parties, a court 'will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.'" *Schaaf*, 233 F.R.D. at 453 (quoting *Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC*, 227 F.R.D. 421, 426 (M.D.N.C. 2005)). The determination of the reasonableness of a subpoena requires the court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it, weighing the benefits and burdens, considering whether the information is necessary and whether it is available from another source. *See* 9A Wright & Miller, *Fed. Practice & Procedure* § 2463.1 (3d ed.) (collecting cases); *Spring v. Bd. of Trs. of Cape Fear Cmty. Coll.*, No. 7:15-CV-84-BO, 2016 WL 4204153, at *1 (E.D.N.C. Aug. 8, 2016). The party seeking the court's protection from responding to discovery "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Mainstreet Collection*, 270 F.R.D. at 240

13

(citation omitted). Accordingly, it is Onslow County and Sheriff Miller's burden to show why discovery should be denied. *See U.S. Equal Emp't Opportunity Comm'n v. Bojangles' Rests., Inc.*, No. 5:16-CV-654-BO, 2017 WL 2889493, at *3 (E.D.N.C. July 6, 2017) (citing *Papanicolas v. Project Execution & Control Consulting, LLC*, No. CIV.A. CBD-12-1579, 2015 WL 1242755, at *1 (D. Md. Mar. 17, 2015) (noting that "'[t]he burden of proving that a subpoena is oppressive is on the party moving to quash'"); *Sherrill v. DIO Transp., Inc.*, 317 F.R.D. 609, 612 (D.S.C. 2016) ("[T]he burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted.") (citation omitted). Onslow County and Sheriff Miller contend that the documents sought are subject to N.C. Gen. Stat. § 153A-98, are attorney work product, and are subject to the attorney-client privilege. Section 153A-98 having been discussed above, the present order will suffice to meet that statute's court order requirement. Accordingly, the remaining issues are whether the interviews are attorney work product or subject to the attorney-client privilege.

## 1. Attorney Work Product

The work-product privilege generally protects "the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case," *United States v. Nobles*, 422 U.S. 225, 238 (1975), and has been incorporated, in part, into the Federal Rules of Civil Procedure:

Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

14

> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A).[1] While the work-product provision in the Federal Rules applies to "documents and tangible things," *id.*, the common law work-product privilege also covers "counsel's mental impressions, conclusions or opinions [] sought in the context of a deposition, rather than as memorialized on paper[.]" *Maynard v. Whirlpool Corp.*, 160 F.R.D. 85, 87 (S.D.W. Va. 1995) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). "In claiming the work-product privilege, the party must demonstrate that the documents in question were created 'in preparation for litigation.'" *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501–02 (4th Cir. 2011) (quoting *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994)). "To help distinguish between 'anticipation of litigation' and 'ordinary course of business,' several courts of appeals, including the Fourth Circuit, have held that an attorney's work is protected when it was created 'because of' the prospect of litigation." *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 746–47 (E.D. Va. 2007) (quoting *National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980 (4th Cir.1992)). The proponent of work-product protection has the burden of establishing its applicability. *Sandberg v. Va. Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir. 1992).

"In the human resources context, courts are split as to whether documents created during an internal investigation of a harassment complaint are created in the ordinary course of business or in anticipation of litigation." *Lewis v. Richland Cty. Recreation Comm'n*, No. 3:16-CV-2884-MGL-TER, 2018 WL 4596119, at *7 (D.S.C. Sept. 25, 2018) (collecting cases). If documents are created pursuant to an internal policy irrespective of litigation, then the work-product doctrine does

---

[1] "In matters involving the attorney work product protection, federal courts are to apply federal law, as opposed to state law . . . ." *Spilker v. Medtronic, Inc.*, No. 4:13-CV-76-H, 2014 WL 4760292, at *4 (E.D.N.C. Sept. 24, 2014) (citation omitted).

15

not apply. *See RLI Ins. Co.*, 477 F. Supp. 2d at 747 (holding that the work product doctrine only protects documents "that [were] conducted because of for [sic] litigation, not work that would have been done in any event."); *Long v. Anderson Univ.*, 204 F.R.D. 129, 137 (S.D. Ind. 2001) ("Although counsel advised Defendants throughout the process of their investigation, it took place as a result of the university's harassment policy, thus as an ordinary and customary step in conducting its business. Further, even though counsel for Plaintiffs did threaten litigation if the potential claims were not resolved, the mere anticipation of litigation does not shield these documents from production."). However, if documents are created because of the prospect of litigation, then the work product doctrine applies. *See Interbake Foods*, 637 F.3d at 502 (applying the work product doctrine because "the communications concerned an investigation closely linked to the ongoing NLRB adjudication."); *Moore v. DAN Holdings, Inc.*, No. 1:12-CV-503, 2013 WL 1833557, at *7 (M.D.N.C. Apr. 30, 2013) (noting that "an investigation following an EEOC charge constitutes activity in anticipation of litigation" and "the work product doctrine does not apply only to investigations conducted by counsel").

Plaintiff contends that the interviews were conducted in the ordinary course of business because an Onslow County policy provides that once the Sheriff's Office is made aware of the possibility of sexual harassment, a prompt and thorough investigation must be conducted. Pl.'s Resp. [DE-56] at 5. Nonetheless, Mr. Deselms's affidavit establishes that this investigation was undertaken because of Plaintiff's EEOC charge. [DE-48-5]. Plaintiff filed her EEOC charge on May 31, 2018, and attorney Brett Deselms responded to the charge on behalf of the Onslow County Sheriff's Office. *Id.* at 1. Mr. Deselms stated in his affidavit that he instructed the Human Resources Department to conduct the interviews as part of his factual investigation of the allegations of the charge. *Id.* Additionally, the interviews were conducted in August 2018, more

16

than two months after Plaintiff filed the EEOC charge. [DE-48-4] at 2–3; *see also Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 536, 542 (N.D.W. Va. 2000) ("the Court considers persuasive, in this analysis, the time when the document is created."). Despite the existence of a policy mandating an investigation, it appears that these interviews were conducted because of and in response to Plaintiff's EEOC charge, and the work product doctrine applies. *See Bennett v. CSX Transp., Inc.*, No. 5:10-CV-00493-BO, 2011 WL 4527430, at *3 (E.D.N.C. Sept. 26, 2011) (holding that "[w]hile Plaintiff may be correct that risk management department documents can generally be created in the ordinary course of business, the Court finds that Defendant has made a sufficient showing that the one in question here was prepared in anticipation of litigation" where the defendant's attorney submitted an affidavit stating that the investigation was conducted in anticipation of litigation).

Although the documents here are found to be work product, they may nonetheless be discoverable. "If the document does not include an attorney's mental impressions or 'opinion work product' it can be discovered 'upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship.'" *United States v. Hawkins*, No. 5:18-HC-2237-FL, 2019 WL 1379931, at *5 (E.D.N.C. Mar. 27, 2019) (quoting *In re Grand Jury Proceedings #5 Empaneled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005)). In determining whether witness interviews are potentially discoverable fact work product or generally undiscoverable opinion work product, "courts look at whether the content of the memorandum has been 'sharply focused or weeded' by counsel." *United States v. Bertie Ambulance Serv., Inc.*, No. 2:14-CV-53-F, 2015 WL 3932167, at *5 (E.D.N.C. June 25, 2015) (quoting *U.S. Ex. Rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 429, 431 (D.D.C.2014)). "Substantially verbatim" witness statements are often considered fact work product, but "when

17

counsel 'selected witnesses to be interviewed, selected the topics to be addressed with each witness, selected the documents to be shown to witnesses, led the interviews, and asked the questions,' the memoranda [are] considered opinion work-product." *Id.* (quoting *Tailwind*, 303 F.R.D. at 431–32)).

If the documents contain both fact and opinion work product, "courts will usually allow the attorney to redact any portions of the communications with potential witnesses that 'would tend to reveal the thought processes and legal strategies' of the attorney before producing the communications." *TJF Servs., Inc. v. Transportation Media, Inc.*, No. 5:17-CV-626-RN, 2019 WL 7599942, at \*11 (E.D.N.C. Jan. 22, 2019) (quoting *Carolina Power & Light Co. v. 3M Co.*, 278 F.R.D. 156, 160 (E.D.N.C. 2011)); *see also Parkdale Am., LLC v. Travelers Cas. & Sur. Co. of Am.*, No. 3:06-CV-78-R, 2007 WL 4165247, at \*14 (W.D.N.C. Nov. 19, 2007) ("The Plaintiffs may redact from this production any information that amounts to opinion work product.").

Here, it appears that at least some of the documents at issue are fact work product and not opinion work product. All but one of the disputed documents are voice recordings and rough transcripts of interviews; they are likely "substantially verbatim" witness statements. *See Bertie Ambulance Service*, 2015 WL 3932167, at \*5. Only the last document—the memorandum from the Human Resources Director to the County Attorney—is likely to contain opinion work product. Accordingly, the question becomes whether Plaintiff has a substantial need for the fact work product at issue and whether she can secure their substantial equivalent without undue hardship. *See* Fed. R. Civ. P. 26(b)(3)(A); *Hawkins*, 2019 WL 1379931, at \*5.

Plaintiff contends that she has a substantial need for the interviews and cannot secure their substantial equivalent because (1) the discovery order in this case does not allow her to conduct eighteen depositions, and (2) two years have passed since the relevant events, so the interviews

18

are likely to contain more accurate recollections than could be procured now. Pl.'s Resp. [DE-56] at 6–7.

First, the inability to depose all eighteen witnesses does not equate to a substantial need for the interview transcripts or the inability to obtain their statements through other means. Plaintiff may depose her allotted number of witnesses to obtain information on the relevant facts and circumstances that were the subject of the initial interviews. *Smith v. Trans Am Trucking, Inc.*, No. 3:06-CV-483-RJC-DCK, 2008 WL 943368, at *3 (W.D.N.C. Apr. 7, 2008) ("Plaintiff has had ample opportunity to gather relevant testimony through the depositions of Mr. Spiller and other witnesses."). Plaintiff may also request an amendment to the scheduling order in this case allowing her to conduct additional depositions, if needed. Furthermore, Plaintiff could attempt to informally interview the witnesses herself. *See Bertie Ambulance Serv.*, 2015 WL 3932167, at *7 ("if a witness is available to the other party, [work product] discovery is generally not allowed."). In *Bertie Ambulance Service*, the defendants *did* attempt to contact witnesses, and the court held, "[a]lthough Defendants have attempted to contact some of the witnesses by telephone with no success, 'it is clear that the mere refusal of these witnesses to be interviewed by defendants' counsel does not constitute a sufficient showing of necessity to justify disclosure of otherwise privileged work product.'" *Id.* (quoting *United States v. Am. Optical Co.*, 37 F.R.D. 233, 238–39 (E.D. Wis. 1965)). Accordingly, here—where Plaintiff has not even attempted to interview the witnesses—her inability to conduct eighteen depositions does not mandate disclosure of Defendants' attorney work product.

Second, the passage of two years does not amount to a substantial need for the interview transcripts. *Bertie Ambulance Serv.*, 2015 WL 3932167, at *7 ("the passage of time, standing alone, is not always sufficient to establish substantial need."). In *Bertie*, two witnesses were

19

deceased, and the court held that there was no substantial need for their interviews because "Defendants have failed to show any measures taken to try to obtain the information from another source." *Id.* Likewise, here, even if the witnesses' memories have weakened over the course of two years, Plaintiff has not shown any attempt to obtain the relevant information from sources other than Defendants' attorney work product.

In summary, Plaintiff may depose some of the witnesses, she may ask the court for permission to take additional depositions, or she may attempt to interview the witnesses herself. There is no substantial need for Defendants to produce their work product, and Plaintiff is seemingly able to obtain substantially equivalent information without undue hardship. Accordingly, the court declines to compel Sheriff Miller and Onslow County to produce the interviews and memorandum on the basis that they are protected attorney work product.

### 2. Attorney-Client Privilege

Sheriff Miller and Onslow County also contend that the interviews and memorandum are protected by the attorney-client privilege. Def.'s Mem. [DE-49] at 7–9. Plaintiff responds that the attorney-client privilege does not apply because the interviews were conducted pursuant to the county's policy that mandates an investigation following a complaint of sexual harassment, and the attorney did not render legal advice so much as he prodded the county into following its own policy. Pl.'s Resp. [DE-56] at 7–8.

A party asserting the attorney-client privilege must demonstrate:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

20

*In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997) (citations omitted).

Here, Mr. Deselms's affidavit establishes that Onslow County and Sheriff Miller were his clients, he is an attorney and acted as such when he responded to Plaintiff's EEOC charge and ordered the factual investigation, the interviews were completed in connection with the factual investigation into Plaintiff's EEOC charge, and he ordered and directed the interviews for the purpose of rendering legal advice and services in connection with the EEOC charge and the anticipation of future litigation. [DE-48-5] at 1–2. Whether or not the county's policy mandates an investigation, it is clear from Mr. Deselms's affidavit that these interviews were conducted so that he might render legal advice to the county. *Id.* at 2; *see also In re NC Swine Farm Nuisance Litig.*, No. 5:15-CV-13-BR, 2017 WL 2313470, at *6 (E.D.N.C. May 26, 2017) ("the privilege log sufficiently demonstrates that counsel were included on the email for the purpose of receiving information to provide a legal opinion and mere speculation that the purpose was business and not legal does not justify in camera review."). Accordingly, the attorney-client privilege provides an alternative basis for allowing Onslow County and Sheriff Miller's motions. Because the communications are protected attorney work product and subject to the attorney-client privilege, Sheriff Miller and Onslow County's motion to quash is allowed, and Sheriff Miller's motion for a protective order is allowed.

**3. Costs**

Onslow County and Sheriff Miller request that the attorney fees and costs incurred in responding to the subpoena and filing the motion to quash be taxed against Plaintiff. [DE-48] at 4.

Federal Rule of Civil Procedure 45(d)(1) provides:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

An award of attorney fees is appropriate where "[t]here is no evidence before the court that indicates that [] counsel took any steps to avoid imposing an undue burden." *Gilreath v. Cumberland Cty. Bd. of Educ.*, No. 5:11-CV-00627, 2014 WL 6606566, at *1 (E.D.N.C. Nov. 19, 2014) (awarding fees where the subpoena was served three days prior to trial and required the production of hundreds to thousands of documents).

Onslow County and Sheriff Miller contend that the court should award attorney fees because Plaintiff did not withdraw the subpoena after she was informed of their objections to producing the documents. However, there is evidence before the court that Plaintiff took reasonable steps to avoid imposing an undue burden. *See Gilreath*, 2014 WL 6606566, at *1. Plaintiff's position that the documents were prepared in the ordinary course of business, while not ultimately adopted by the court, is reasonable, and Plaintiff conferred with Defendants' counsel on December 19 and 20, 2019 regarding the dispute. The motion to quash the subpoena is allowed, but it does not appear that Plaintiff failed to take reasonable steps to avoid undue burden or expense. Accordingly, the court declines to award attorney fees and costs to Onslow County and Sheriff Miller.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel [DE-40] is allowed in part and denied in part, Plaintiff's request for an award of expenses is denied, Onslow County and Sheriff Miller's motion to quash [DE-48] is allowed, Sheriff Miller's motion for a protective order [DE-48] is allowed, and Defendants' request for an award of fees and costs is denied.

22

So ordered, the 9th day of March 2020.

Robert B. Jones, Jr.
United States Magistrate Judge