IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:18-CV-206-FL

|  |  |  |
|---|---|---|
| MARISA REVAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HANS J. MILLER, Sheriff, in his | ) | ORDER |
| official and individual capacity, and THE | ) | |
| OHIO CASUALTY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motions for attorneys' fees (DE 140) and bill of costs (DE 139). Issues raised are ripe for ruling. For the following reasons, defendants' motion for attorneys' fees is denied and defendants' motion for costs is granted in part and denied in part.

## STATEMENT OF THE CASE

The court summarizes as follows the background of the case pertinent to the instant motion. Plaintiff, a former detention officer, initiated this employment discrimination action November 20, 2018, against her former employer, Hans J. Miller ("Miller"), sheriff of Onslow County, North Carolina; and the provider of Miller's surety bond, The Ohio Casualty Insurance Company ("OCIC").[1] Plaintiff asserted claims for hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., ("Title VII");

---

[1] Onslow County Sheriff's Office was also named a defendant. During the course of litigation, the court dismissed all claims against it. (See DE 88).

violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983; negligent failure to prevent civil rights violations, pursuant to 42 U.S.C. § 1986; and a state claim for unpaid wages under the North Carolina Wage and Hour Act ("NCWHA"). All claims stemmed from the alleged discriminatory conduct of Captain Frederick Jefferies ("Captain Jefferies"), plaintiff's direct supervisor. (Compl. (DE 1) ¶ 12, 17 ("Captain Jefferies subjected Plaintiff to sustained and severe harassment on the basis of her sex, including manipulation of her work schedule and job duties, and verbal abuse.")). Plaintiff sought compensatory and punitive damages, declaratory relief, attorneys' fees, and costs.

Plaintiff filed her amended complaint February 8, 2019, as a matter of course, asserting substantially the same claims. Defendants moved in response to dismiss all plaintiff's claims except her NCWHA claim for unpaid wages. The court dismissed plaintiff's retaliation, § 1983, and § 1986 claims. Plaintiff subsequently moved to amend her complaint, which motion the court granted in part and denied in part as futile. Plaintiff's Title VII claim for hostile work environment and her NCWHA claim for unpaid wages, as well as her amended claim for § 1983 supervisory liability against defendant Miller, were allowed to proceed.

Defendants subsequently moved without opposition to dismiss plaintiff's NCWHA claim. Then remaining were plaintiff's claims for hostile work environment and § 1983 supervisory liability. After a period of somewhat contentious discovery, defendants' motion for summary judgment on remaining claims was allowed, and judgment entered in favor of defendants.

Defendants filed the instant motions for attorneys' fees and costs August 30, 2021, with reliance upon sworn written testimony of Mary Craven Adams, counsel for defendants, together with an itemized billing statement, invoices for recorded transcripts, and a copy of a check written

2

for the attendance of a witness. Plaintiff responded in opposition to the motions, to which defendants replied.

## COURT'S DISCUSSION

A. Attorneys' Fees

Defendants seek attorneys' fees pursuant to 42 U.S.C. § 2000e–5(k), 42 U.S.C. § 1988(b), and N.C.G.S. § 95-25.22(d).

A trial court may, in its discretion, allow the prevailing party a reasonable attorneys' fee as part of costs in Title VII and § 1983 actions. 42 U.S.C. § 2000e–5(k); 42 U.S.C. § 1988(b). Where the prevailing party is a defendant, the court must rest imposition of fees "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation," or "that the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 421–22 (1978) (establishing the standard in Title VII action); Hutchinson v. Staton, 994 F.2d 1076, 1080 (4th Cir. 1993) (applying Christiansburg to § 1983 action).[2] Likewise, under the NCWHA, "[t]he court may order costs and fees of the action and reasonable attorney's fees to be paid by the plaintiff if the court determines that the action was frivolous." N.C. Gen. Stat. § 95-25.22(d).

"[A]warding attorneys' fees to a prevailing defendant is a conservative tool, to be used sparingly in those cases in which the plaintiff presses a claim which [s]he knew or should have known was groundless, frivolous, or unreasonable." E.E.O.C. v. Great Steaks, Inc., 667 F.3d 510, 517 (4th Cir. 2012). "There is neither a precise test to be used, nor a specific quantum of proof required, in determining whether a plaintiff's claim was unreasonable." E.E.O.C. v. Propak Logistics, Inc., 746 F.3d 145, 151 (4th Cir. 2014). "Instead, a decision whether attorneys' fees

---

[2]     Internal citations and quotation marks are omitted from all citations unless otherwise specified.

should be awarded to a prevailing defendant . . . is peculiarly within the province of the trial judge, who is on the scene and able to assess the oftentimes minute considerations which weigh in the initiation of a legal action." Id.

"[T]he district court should examine the suit against the background of the law at the time of filing and the facts then known to [the plaintiff]." Lotz Realty Co. v. U.S. Dep't of Hous. & Urb. Dev., 717 F.2d 929, 932 (4th Cir. 1983). "The plaintiff's motive for bringing an action is not central to determining frivolousness for the purposes of awarding attorneys' fees." Arnold v. Burger King Corp., 719 F.2d 63, 66 (4th Cir. 1983). "However, although the motivation factor is not a prerequisite to the award of attorneys' fees to the defendant, it may shed light on the degree of frivolousness." Id.

"In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, [her] action must have been unreasonable or without foundation." Christiansburg Garment Co., 434 U.S. at 422-23.

> This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

Id. at 422.

In the instant case, defendants assert that as of June 26, 2020, when plaintiff filed her second amended complaint, plaintiff litigated her claims for hostile work environment and § 1983 supervisory liability after it was clear they lacked factual support. On review of the record, the court cannot agree.

4

With respect to her hostile work environment claim, plaintiff's evidence upon opposing summary judgment suggested Captain Jefferies made numerous unwelcome and sometimes gendered comments in his role as plaintiff's supervisor. Plaintiff testified Captain Jefferies: 1) referred to her as "little girl," (see Pl. Dep. (DE 127-11) 123:1-4); 2) stated he did not understand why women with children worked, (id. 65:10-25); 3) told her that "[her] place was at home with [her] kids," (id. 133:14-15); 4) "made it clear [his] wife never worked. She stayed home and took care of the kids and [he] sent home the money," (id. 156:9-13); and 5) threw papers at plaintiff's desk, once knocking over a drink, (id. 150:3-18). Captain Jefferies testified that he yelled at plaintiff for giving an inmate a card with glitter, (Jefferies Dep. (DE 109-7) ¶ 72:12-15; see also Pl. Dep. (DE 127-11) 101:19-20). Additionally, plaintiff testified Captain Jefferies yelled at her: 1) when questioning her timecard, (Pl. Dep. (DE 127-11) 164:10-14); 2) upon her request to work on the weekend, (Pl. Dep. (DE 127-11) 147:16-19; see also Parrott Dep. (DE 127-10) 23:24-24:2); and 3) when she told a family not to set up a Paytel account, (Pl. Dep. (DE 127-11) 140:3-17). (See, e.g., Pl's Summary Judgment Br. (DE 125) at 19-20). Though unmeritorious, plaintiff's claim of a hostile work environment thus cannot fairly be said to be baseless.

As to plaintiff's claim for § 1983 supervisory liability against defendant Miller, though plaintiff's evidence failed to establish defendant Miller was on notice of a pervasive and unreasonable risk of constitutional injury, and thus her claim ultimately was unsuccessful, her evidence did indicate he was aware Captain Jefferies was engaged in alleged misconduct. On summary judgment, plaintiff pointed to evidence that: 1) she and Christine Parrott ("Parrot"), plaintiff's co-worker, had complained to other superiors including Major Tommie Thomas ("Major Thomas"), Lieutenant Michael Barron ("Lieutenant Barron"), Colonel Donald Worrell ("Colonel Worrell"), and Major Lewis Zimmerman, II ("Major Zimmerman") that Captain

5

Jefferies was ignoring them and acting hostile, (Parrott Dep. (DE 127-10) 39:10-43:4); 2) plaintiff and Parrott had approached Major Zimmerman twice, complaining that Captain Jefferies "was not nice," (Zimmerman Dep. (DE 127-14) 45:1-11); 3) plaintiff complained to Colonel Worrell that Captain Jefferies changed her timecard, and when Colonel Worrell offered to fix it, plaintiff stated "Well, no, no, I need the money," (Worrell Dep. (DE 127-13) 47:1-8); 4) defendant Miller received information from Major Zimmerman and Colonel Worrell that plaintiff "was not happy with Captain Jefferies because he was loud . . . that he threw a paper or some mail onto her desk . . that he was loud and gruff and that she felt unhappy or under stress," (Def. Miller Dep. (DE 127-9) 88:24-89:13); and 5) after defendant Miller received information from Major Zimmerman, he held a conference with Captain Jefferies to address "his overall attitude," the problem between Captain Jefferies and plaintiff, and Captain Jefferies's "loudness and being gruff and everything," (id. 147:1-24).  (See, e.g., Pl's Summary Judgment Br. (DE 125) at 23).

In sum, plaintiff's evidence in support of both claims far surpassed the "conjecture and speculation" that the United States Court of Appeals for the Fourth Circuit has previously held warranted fees.  Christiansburg Garment Co., 434 U.S. at 422-23; Hutchinson, 994 F.2d at 1080. For instance, in Hutchinson, the court concluded fees were proper where the plaintiffs provided nothing to support their theory "that a cabal of private citizens and local election officials had hired [an electronic voting company] to design a riggable vote tabulation system . . . . except evidence of motive and opportunity."  994 F.2d at 1079-80.  "Even by the time of trial, plaintiffs were unable to back their conspiracy theory with anything beyond conjecture and speculation."  Id. at 1080. Similarly, in Arnold, the Fourth Circuit held a lower court's finding of frivolousness was justified in a race discrimination case where the record was "devoid of any credible evidence to support [plaintiff's] claim that he was discharged for racial reasons."  Arnold, 719 F.2d at 65, 67.  There,

"[i]n the trial against [defendant], [plaintiff's] only evidence was his testimony and the testimony of several co-workers and friends attesting to his good character."  Id. at 65.  By comparison, and as outlined above, plaintiff here supported her claims with specific factual allegations supported by deposition testimony.  See Glymph, 783 F.2d at 480 (reversing the district court's determination that the plaintiff's claims were frivolous based on insufficient evidence where "[h]er case depended almost wholly on her oral testimony").  Thus, where "awarding attorneys' fees to a prevailing defendant is a conservative tool, to be used sparingly," such fees are inappropriate here.  Great Steaks, Inc., 667 F.3d at 517, 519 (holding the lower court acted within its discretion in denying fees where plaintiff "had a factual and legal basis from start to finish").

Defendants' arguments to the contrary are unavailing.  Defendants assert plaintiff made factual allegations in her second amended complaint that she knew she could not support with admissible evidence, rendering the claims that depended on them frivolous, unreasonable, or groundless.  Defendants' fail to demonstrate plaintiff's claims were devoid of support, however, and instead point to instances where plaintiff's evidence could have been more persuasive.  For instance, defendants assert there was only evidence of two episodes where Captain Jefferies threw papers on plaintiff's desk.  While certainly it would have been more compelling if plaintiff provided additional evidence of paper throwing, two such instances remain probative of hostility.  Similarly, defendants assert the evidence showed there was in fact an inmate-glitter policy.  While again plaintiff's evidence would have been more persuasive if it showed Captain Jefferies enforced a nonexistent policy only as to her, her evidence still suggested Captain Jefferies enforced the existing policy unpleasantly as to her.

Finally, while defendants correctly assert there was no competent evidence that Captain Jefferies referred to plaintiff and Parrott as "f***ing b****es," (Defs' Reply (DE 146) at 3), there

7

remained evidence that Captain Jefferies had on other occasions espoused discomforting views of gender. (See, e.g., Pl. Dep. (DE 127-11) 65:10-25 (Captain Jefferies responded to a babysitting issue by telling plaintiff he did not understand why women with children worked); id. 123:1-4 (Captain Jefferies referred to plaintiff as a "little girl"); id. 133:14-15 (Captain Jefferies "made it clear [his] wife never worked. She stayed home and took care of the kids and I sent home the money"); see also Summary Judgment Order (DE 137) at 12).  To hold sanctions appropriate simply because plaintiff's evidence might have been more compelling would be to indulge in the "temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, [her] action must have been unreasonable or without foundation." Christiansburg Garment Co., 434 U.S. at 422-23.

Defendants additionally point to the difference between the standard for summary judgment and a motion to dismiss, asserting that:

> Given the relation of these standards, it necessarily follows that the difference between [p]laintiff's survival of [d]efendants' prior motions to dismiss and her failure to overcome [d]efendants' motion for summary judgment was her failure to proffer admissible evidence establishing facts deemed critical to the [c]ourt's prior rulings that her First and Second Amended Complaints stated claims upon which relief could be granted.

(Defs' Reply (DE 146) at 8).  In other words, defendants suggest that because plaintiff survived defendants' motion to dismiss, but did not survive defendants' motion for summary judgment, it necessarily follows that she was unable to support her claims with sufficient evidence, thus rendering them frivolous for lacking factual support.  Adopting this reasoning in any case would lead to absurd results, for any time a plaintiff succeeds on motion to dismiss but fails on motion for summary judgment, thus indicating she "failed to proffer admissible evidence establishing facts deemed critical to the [c]ourt's [order on motion to dismiss]," she would liable for attorneys' fees. Where the Fourth Circuit has directed district courts to "award such fees sparingly," the court

8

cannot accept such reasoning. Glymph v. Spartanburg Gen. Hosp., 783 F.2d 476, 479 (4th Cir.1986); see Christiansburg Garment Co., 434 U.S. at 422-23 ("[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.").

Turning, then, to plaintiff's claim under the NCWHA, defendants contend it was frivolous as a matter of law as defendant Miller in his official capacity is exempt from its provisions. (Defs' Mem. (DE 141) at 6). It is incongruous for defendants now to assert plaintiff's NCWHA was frivolous where it was plaintiff's only claim defendants did not initially move to dismiss. Indeed, defendants did not raise the defense that the NCWHA does not apply to defendant Miller until August 31, 2020, nearly two years after plaintiff filed her initial complaint. Particularly where plaintiff ceased to pursue her NCWHA claim following defendants' motion, the court declines to award fees on this basis.

In sum, plaintiff's claims against defendants were not frivolous, unreasonable, or groundless, and the "extreme sanction" of awarding such fees is unwarranted. Jones, 789 F.2d at 1232. Therefore, defendants' motion for attorney fees must be denied.

B. Costs

"[I]n the ordinary course, a prevailing party is entitled to an award of costs." Teague v. Bakker, 35 F.3d 978, 996 (4th Cir.1994). Though plaintiff asserts generally that defendants' motion for costs should be denied, she offers specific argument only as to imposition of fees. (Pl. Response (DE 143) at 1, 9-10). Plaintiff has otherwise "suggested no reason to depart from th[e] presumption in favor of an award of costs to the prevailing party," Rodriguez v. Smithfield Packing Co., 338 F.3d 348, 354 n.4 (4th Cir. 2003) (denying attorneys' fees after determining that

plaintiff's argument was not "frivolous, unreasonable, or without foundation," but nevertheless awarding costs to defendant); see Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc., 899 F.2d 291, 296 (4th Cir. 1990) ("[D]istrict courts may not depart from the normal practice of awarding fees to the prevailing party without first articulating some good reason for doing so.").

Accordingly, the court awards defendants' costs, excepting attorneys' fees, presently listed in defendants' bill of costs. See 28 U.S.C. § 1920. These comprise compensable costs in the amount of $7,246.65 for transcripts and fees for a witness. Therefore, defendants' motion for bill of costs is granted in that part seeking compensable costs and denied in that part seeking an award of attorneys' fees.

## CONCLUSION

Based on the foregoing, defendants' motion for attorneys' fees (DE 140) is DENIED and defendants' motion for bill of costs (DE 139) is GRANTED IN PART and DENIED IN PART, as set forth herein. The clerk is DIRECTED to enter judgment of costs in favor of defendants in the amount of $7,246.65, pursuant to 28 U.S.C. § 1920, and thereupon close this case.

SO ORDERED, this the 8th of July, 2022.

LOUISE W. FLANAGAN
United States District Judge